JD:DEL
F. #2020R00057

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (843) 908-0626 AND IMEI NUMBER 015423000048550, THAT IS STORED AT PREMISES CONTROLLED BY VERIZON | **SEARCH WARRANT APPLICATION FOR HISTORICAL CELL-SITE INFORMATION**<br><br>Case No. 20 MC 219 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Elisabeth Wheeler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (843) 908-0626 ("the SUBJECT PHONE"), IMEI NUMBER 015423000048550, which has no listed subscriber but is associated with GEROD WOODBERRY, that is stored at premises controlled by Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon Wireless to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been for the past eight years. As a result of my training and experience, I have conducted or participated in the execution of search warrants, including analysis of cellphone data. Thus, I have experience using various forms of electronic surveillance.

3. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of law enforcement officers involved in the investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that GEROD WOODBERRY has committed violations of 18 U.S.C. § 2113(a) (bank robbery) ("Subject Crimes"). Specifically, the investigation has revealed that WOODBERRY has robbed, or attempted to rob, approximately six New York City banks within 16 days: on December 30, 2019, January 3, 2020, January 6, 2020, January 8, 2020, January 10, 2020 and January 14, 2020. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. On January 8, 2020, WOODBERRY was arrested by the New York City Police Department ("NYPD") for the December 30, 2019 bank robbery. WOODBERRY was released on January 10, 2010, without bail in the Criminal Court of New York County. Prior to his release, a Detective with the NYPD observed that WOODBERRY was carrying a cell phone.

6. On January 10, 2020, at approximately 5:33 p.m.—within four hours of his release from state court—WOODBERRY entered the branch of Chase Bank located at 20

2

Flatbush Avenue, Brooklyn, New York and proceeded to a teller. The defendant had a dark mustache and was wearing a black and red baseball hat with what appeared to be a Chicago Bulls logo, a dark jacket and hooded sweatshirt with the hood down, ripped jeans and grey sneakers. He passed a demand note to the teller. The Demand Note stated, "THIS IS A ROBBERY BIG BILLS ONLY NO DYE PACKS." The teller handed the defendant approximately $1,000 in United States currency. The defendant took the money and fled the bank.

7. On January 14, 2020, the Honorable Ramon E. Reyes, United States Magistrate Judge, authorized the arrest of WOODBERRY for a violation of Title 18, United States Code, Section 2113(a) based on the January 10, 2020 robbery. See 20-MJ-52.

8. Also on January 14, 2020, WOODBERRY entered a Citibank branch in Manhattan, approached a teller and presented her with a demand note. The note read, "THIS IS A ROBBERY LARGE BILLS ONLY!!!" The defendant received no money and fled the bank.

9. On January 17, 2020, WOODBERRY turned himself in to the NYPD. He has been in federal custody since that time. When he turned himself in, he was carrying a cell phone, a black TCL smartphone with a cracked screen.

10. Law enforcement officers recovered surveillance video for both the January 10, 2020 robbery and the January 14, 2020 robbery. I have reviewed this video and observed that, in both robberies, WOODBERRY arrived at each bank accompanied by another male individual ("Individual-1"). In both instances, WOODBERRY and Individual-1 were interacting prior to entering the banks. Each surveillance video then depicts WOODBERRY and Individual-1 casing each bank, that is, walking in and around the bank several times, entering and exiting the bank and observing activity inside the bank.

3

11.     Further, in the January 10, 2020 robbery, after WOODBERRY received the money and fled the bank, surveillance video depicts him speaking on a cellular telephone. After the robbery, WOODBERRY exited the bank. Within seconds, Individual-1 also walked away from the bank. Surveillance video also depicts WOODBERRY looking at the illuminated screen of a cellular telephone after exiting the bank.

12.     A similar pattern emerged in the January 14, 2020 robbery. Specifically, surveillance video depicts WOODBERRY speaking on a cellular telephone after he exited the bank. Again, Individual-1 walked away from the bank, following WOODBERRY, shortly thereafter.

13.     Because WOODBERRY had a cracked cellular telephone in his possession immediately prior to his commission of the January 10, 2020 and January 14, 2020 robberies, and because he was found with a cracked cellular telephone in his possession when he surrendered shortly thereafter, and because surveillance video depicts WOODBERRY using a cellular telephone during the commission of these robberies, where he appeared to have an accomplice, I submit there is probable cause that that location data for the SUBJECT PHONE for time period of December 30, 2019 through January 14, 2020, will provide evidence of GEROD WOODBERRY's involvement in the SUBJECT OFFENSES.

14.     In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic

4

areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

16. Based on my training and experience, I know that Verizon Wireless also collects per-call measurement data, which Verizon Wireless also refers to as the "Real-Time Tool" ("RTT"), "Advanced Timing Data" and/or "Per Call Measurement Data" ("PCMD"). RTT, Advanced Timing Data and PCMD data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

17. Based on my training and experience, I know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account

5

number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon Wireless typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

18.  Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

19.  I further request that the Court direct Verizon Wireless to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Verizon Wireless, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Elisabeth Wheeler
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January 24, 2020

_____
HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (843) 908-0626 and International Mobile Subscriber Identity/Electronic Serial Number 015423000048550 ("the Account"), that are stored at premises controlled by Verizon Wireless ("the Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of December 30, 2019 through January 14, 2020:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data, "Advanced Timing Data," "Per Call Measurement" data and/or "PCMD").

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2113(a) (bank robbery) involving Gerod Woodberry during the time period of December 30, 2019 through January 14, 2020.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are

3

authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Verizon Wireless, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Verizon Wireless. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Verizon Wireless, and they were made by Verizon Wireless as a regular practice; and

    b. such records were generated by Verizon Wireless electronic process or system that produces an accurate result, to wit:

        1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Verizon Wireless in a manner to ensure that they are true duplicates of the original records; and

      2.    the process or system is regularly verified by Verizon Wireless, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____       _____
Date                                                Signature